# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHARLES E. ANDERSON, Trustee on behalf of PAINTERS' DISTRICT COUNCIL NO. 30 HEALTH AND WELFARE FUND, PAINTERS' DISTRICT COUNCIL NO. 30 PENSION FUND, and NORTHERN ILLINOIS PAINTERS, DECORATORS AND DRYWALL FINISHERS JOINT APPRENTICESHIP AND TRAINING FUND; ANTHONY PINTOZZI, JR., Trustee on behalf of the NORTHERN ILLINOIS PAINTING AND DRYWALL INSTITUTE; and the DISTRICT COUNCIL NO. 30 OF THE INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES, AFL-CIO, a labor organization,<br><br>    Plaintiffs,<br><br>  v.<br><br>AB PAINTING AND SANDBLASTING, INC., an Illinois corporation, and MIDWEST PAINTING AND SANDBLASTING, INC., an Illinois corporation,<br><br>    Defendants. | No. 04 C 3302 |

## **MEMORANDUM OPINION**

   Before the court is plaintiffs' motion for summary judgment against Defendant AB Painting and Sandblasting, Inc. ("AB Painting"). For the reasons stated below, plaintiffs' motion is granted.

## BACKGROUND

The following relevant facts are drawn from plaintiffs' statement of material facts and AB Painting's response, with any differences between them resolved in AB Painting's favor. Pursuant to Local Rule 56.1(b)(3)(c), all material facts set forth in the plaintiffs' statement are deemed to be admitted unless controverted by the statement of AB Painting.

This is an action brought pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, as amended, and Section 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3), to collect delinquent employee benefit fund contributions and Union dues and assessments disclosed by audits.

Plaintiffs, the Painters' District Council No. 30 Health and Welfare Fund ("Health and Welfare Fund"), the Painters' District Council No. 30 Pension Fund ("Pension Fund"), the Northern Illinois Painters, Decorators and Drywall Finishers Joint Apprenticeship and Training Fund ("Apprenticeship Fund"), and the Northern Illinois Painting and Drywall Institute ("NIPDI") (collectively "Funds") are employee benefit trusts and/or plans within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3). Plaintiff Charles E. Anderson is a fiduciary and trustee of the Health and Welfare Fund, the Pension Fund, and the Apprenticeship Fund. Plaintiff Anthony Pintozzi, Jr., is a fiduciary and trustee of

NIPDI.

Plaintiff Painters District Council No. 30 of the International Union of Painters and Allied Trades, AFL-CIO ("Union") is a labor organization representing employees in an industry affecting commerce, as defined by LMRA § 301(a), 29 U.S.C. § 185(a). The Union is entitled to collect dues (for the Painters' District Council No. 30 Union Dues Deduction) and defense fund assessments (for the Painters' District Council No. 30 Organizing and Defense Fund) owed to it, and contributions owed to the Painters and Allied Trades Labor Management Cooperation Initiative ("P&AT LMCI") f/k/a the International Brotherhood of Painters and Allied Trades Labor Management Fund ("IBPAT LM&CF"), on behalf of employees covered by one or more collective bargaining agreements.

Defendant AB Painting and Sandblasting, Inc. ("AB Painting") is an Illinois corporation with its principal place of business in the State of Illinois. AB Painting provides painting and sandblasting services to its customers and provides all the tools and equipment for such services. AB Painting is and at all relevant times has been engaged in business in an industry affecting commerce, as defined by LMRA § 301(a), 29 U.S.C. § 185(a), and at all relevant times has been an "employer" as defined by ERISA § 3(5), 29 U.S.C. § 1002(5). Defendant Midwest Painting and Sandblasting, Inc. ("Midwest") is an Illinois corporation with its principal place of business in the State of Illinois.

The Union negotiates collective bargaining agreements ("CBAs") with the FCA of Illinois (f/k/a the Northeast Illinois Chapter of the Painting and Decorating Contractors of America) ("Association"), employers that have assigned to the Association the authority to represent them in collective bargaining, and individual employers, as the bargaining representatives of the employees who perform painting, decorating, and drywall work for those employers. The CBAs require employers to pay contributions to the Funds for covered work performed by employees and to check off and remit dues and defense fund assessments to the Union for those employees monthly.

The funds are third-party beneficiaries of the CBAs between the Union and the Association or individual employers. They are primarily funded by contributions remitted by participating employers pursuant to the CBAs negotiated between the Union and the Association or individual employers. All principal and income that the Pension Fund and Health and Welfare Fund receive from employer contributions and investment thereof is held and used for the exclusive purpose of providing pension and health and welfare benefits to participants and beneficiaries of the respective Funds, and paying the Funds' administrative expenses. All principal and income that the Apprenticeship Fund receives from employer contributions and investment thereof is held and used for the exclusive purpose of providing training, education, and job

development skills to apprentices and journeymen, and paying the Fund's administrative expenses. All principal and income that NIPDI receives from employer contributions and investment thereof is held and used for the exclusive purpose of providing promotional programs for participating employers, and paying the Fund's administrative expenses. All principal and income that the Union receives from dues and the defense fund assessments and investment thereof is held and used for the exclusive purpose of providing membership representation, enforcement of the CBAs, policing the District Council's jurisdiction, organizing the unorganized and paying the Union's administrative expenses.

AB Painting was bound by two different CBAs from January 1, 2001, through September 30, 2004, the time period in question. The first, the 1999-2004 CBA, bound AB Painting from at least January 1, 2001 through April 30, 2004. The second, the 2004-2008 CBA, bound AB Painting from at least May 1, 2004 through September 30, 2004. AB Painting contributed to the Funds pursuant to the CBAs during the entire relevant period.

AB Painting also agreed to adopt and be bound by the provisions of the Funds' Trust Agreements ("Trust Agreements") and the rules and regulations promulgated by the Funds' Trustees under the Trust Agreements. The Trust Agreements require AB Painting to pay continuing and prompt contributions to the Funds for work performed by covered employees in accordance with the applicable

CBAs. Participating employers are required to advise the Funds and Union on a monthly basis of the identities of the employees for whom contributions, dues, and assessments are owed, identify each hour or portion thereof worked by and gross wages paid to those employees, and remit the amounts owed to the Funds and Union for those employees.

The CBAs and Trust Agreements authorize the Funds and Union to audit the books and records of contributing employers and affiliated or related companies or businesses to verify the accuracy and completeness of the employee work history reported to, and the contributions, dues and assessments paid to, the Funds and the Union. On September 10, 2003, plaintiffs' auditor, Bansley and Kiener L.L.P. ("B&K"), conducted an audit of AB Painting's books and records for the period covering January 1, 2001 through March 31, 2003 ("First Audit") to verify the accuracy of the employee work history reported and the corresponding contributions, dues, and assessments paid to the Funds and Union. The First Payroll Audit Report revealed that AB Painting failed to report all hours worked by and gross wages paid to certain individuals, failed to pay the corresponding contributions owed to the various Funds, and failed to remit dues and assessments to the Union during the First Audit period.

The Funds and Union also determined that information received at the First Audit revealed that Midwest might be

operating as the alter ego of AB Painting, and/or that Midwest and AB Painting might be operating as a single employer. The Funds and Union therefore directed B&K in February 2004 to expand the audit of AB Painting to include the period covering April 1, 2003 to September 30, 2004 ("Second Audit"), and to include Midwest as an affiliated or related company of AB Painting for that period as well as for the First Audit period, to determine whether persons appearing on AB Painting's payroll also appeared on Midwest's payroll for the same period. Midwest had neither reported work history nor paid any amounts to the Funds or Union.

On October 28, 2004, B&K conducted the expanded audit. The Second Audit report revealed that AB Painting failed to report employee work history, failed to pay corresponding contributions to the Funds, and failed to remit dues and assessments to the Union, on behalf of various individuals during the Second Audit period. The Second Audit revealed that Ron Beever, whose name appeared on AB Painting's payroll during the First Audit period, also appeared on Midwest's payroll for the months of September 2002 and December 2002. Both the First and Second Audit reports were subsequently revised down by deleting the findings for certain individuals.

Plaintiffs claim damages resulting from AB Painting's failure to contribute to the Funds or remit dues and assessments to the Union for four employees; Ron Beever ("Beever"), Mark Shields ("Shields"), James Logothetis ("Logothetis"), and Brian Richardson

("Richardson"). Plaintiffs claim that AB Painting owes contributions to the Funds and dues/assessments to the Union totaling $1,150.37 for Beever, $100.30 for Shields, $272.78 for Logothetis, and $497.45 for Richardson. AB Painting only disputes plaintiffs' claims with regard to liability for Richardson, claiming that he was an exempt apprentice worker.

The CBAs allow an employer to hire an apprentice worker for a 30-day probationary period without the obligation to contribute to the Funds or remit dues and assessments to the Union for the apprentice during the 30-day probationary period, provided the employer obtains a 30-day apprenticeship permit from the Union. If the employer fails to obtain the permit, contributions to the Funds and dues and assessments to the Union must be made by the employer for that person.

The parties dispute the requirements for obtaining a permit. According to Anderson's declaration, in order to obtain a permit the employer is required to submit a letter of intent to hire the apprentice upon the expiration of the 30-day probationary period; if approved, the Union issues the permit to the employer. He further states in his declaration that permission to employ an apprentice for a 30-day probationary period can only be given by the Union's Secretary-Treasurer, and that permission cannot be given by an Union business agent. AB Painting contends that an employer is not required to submit a letter of intent in order to

hire an apprentice, instead arguing that such permission may be orally granted. AB Painting also disputes plaintiffs' assertions that permission to employ an apprentice for a 30-day probationary period could only be given by the Union's Secretary-Treasurer, claiming that valid permission could also be obtained from a Union business agent.

The parties also dispute whether AB Painting actually sought or received permission to employ Richardson as an apprentice. Plaintiffs contend that the Union did not issue a 30-day probationary permit to employ Richardson to either AB Painting or Midwest Painting. AB Painting stated in its interrogatory responses that Michael Ehrat[1], the Business Agent for the Union, gave oral permission to AB Painting to employ Richardson as an apprentice. It is undisputed that AB Painting has no documentation showing that it either requested or received a 30-day apprenticeship permit for Richardson from the Union.

Plaintiffs now seek summary judgment against AB Painting for the unpaid amounts disclosed by the audits, plus ERISA's mandatory add-ons. AB Painting does not dispute the unpaid amounts with regard to Beever, Shields or Logothetis, but argues that summary judgment is not warranted with regard to the alleged contributions due for Richardson. Plaintiffs also request dismissal of their claims against Midwest, stating that discovery

---

[1] AB Painting mistakenly refers to Mr. Ehrat as Mr. Erhart in its pleadings.

uncovered insufficient evidence to support these claims.

## **DISCUSSION**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. See Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Talanda v. KFC Nat'l Mgmt. Co., 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." Waldridge v. Am. Hoechst Corp, 24 F.3d 918, 920 (7th Cir. 1994).

Once the moving party has supported its motion for summary judgment, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's

response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Any fact asserted in the movant's affidavit will be accepted by the court as true unless the adverse party submits its own affidavits or other evidence contradicting the assertion. Curtis v. Bembenek, 48 F.3d 281, 287 (7th Cir. 1995). If the adverse party does not respond with evidence complying with Rule 56, "summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e).

The parties do not dispute that, under the CBA, AB Painting was required to obtain a permit from the Union for Richardson in order for him to work as an exempt Apprentice applicant. They do, however, dispute how such a permit was to be obtained and whether AB Painting obtained such a permit. According to plaintiffs' Local Rule 56.1 Statement, in order to obtain a permit, an employer is required to submit a letter of intent to hire the apprentice upon the expiration of the 30-day probationary period; if approved, the Union issues the permit to the employer. Permission to employ an apprentice for a 30-day probationary period can only be given by the Union's Secretary-Treasurer. Permission cannot be given by an Union business agent. Plaintiffs' assertions are supported by citations to the declaration of Plaintiff Anderson, who is the Union's Secretary-Treasurer and is familiar with the structure, operation and administration of the Union, and the CBAs. AB

Painting has offered no evidence contradicting plaintiffs' assertions, so they are deemed admitted. See L.R. 56.1(b)(3)( C). See also Curtis, 48 F.3d at 287 (any fact asserted in the movant's affidavit will be accepted by the court as true unless the adverse party submits its own affidavits or other evidence contradicting the assertion).[2]  AB Painting's claim that it could obtain permission orally to employ Richardson as an apprentice worker are unsupported by the record.

Furthermore, even if AB Painting could support its assertion that it was possible to obtain permission to employ Richardson orally, it has failed to provide admissible evidence that it obtained such permission.  AB Painting contends that Michael Ehrat, the Business Agent for the Union, gave oral permission to AB Painting to employ Richardson as an apprentice. In support of its assertion AB Painting cites to its own responses to plaintiffs' interrogatories, which are signed by defendant's counsel.  However, "defendants ordinarily cannot rely on their own answers to interrogatories as affirmative evidence, but instead must provide supporting affidavits or other acceptable evidence."

---

[2] AB Painting contends that the CBAs "do not give exclusive authority to the Union's Secretary Treasurer to permit employment of an apprentice," and "do not preclude the granting of permission to employ an apprentice by a Union Business Agent." Def.'s Resp. To Pls.' L.R. 56.1 Stmt., ¶¶ 64-65. However, the CBAs merely state that a permit must be obtained; they do not address the requirements for obtaining the permit. See Pl. Ex. 1, 1999-2004 CBA at Article X, § 5(a); Pl. Ex. 6, 2004-2008 CBA at Article 10, § 10.5(a). AB Painting's responses, therefore, are inadequate to controvert plaintiffs' assertions regarding the procedure for obtaining a permit based upon Anderson's declaration.

Henderson v. Handy, No. 94 C 0055, 1996 WL 148040, at *4 (N.D. Ill. Mar. 29, 1996). A party's own answers to interrogatories are inadmissible hearsay when offered to prove the truth of the matter asserted, and they fall within no recognized hearsay rule. Charles A. Wright, Arthur R. Miller & Richard L. Marcus, 8A Federal Practice and Procedure § 2180, at 341 (3d Ed. 1994). See also Beniushis v. Apfel, No. 98 C 0395, 2001 WL 303548, at *11 (N.D. Ill. Mar. 27, 2001) ("defendant's own interrogatory answer, not based on personal knowledge, is not admissible evidence."); Duff v. Lobdell-Emery Mfg. Co., 926 F. Supp. 799, 803 (N.D. Ind. 1996) (party's own answers to interrogatories not admissible for purposes of summary judgment); Henderson, 1996 WL 148040 at *4 (same).[3] The purported statements of Michael Ehrat therefore are inadmissible.

AB Painting has failed to offer any admissible evidence to controvert plaintiffs' statements that it failed to obtain a permit from the Union for Richardson in order for him to work as an Apprentice applicant, as required by the CBA. Because AB Painting failed to obtain the required permission, under the CBA it was required to make corresponding contributions to the Funds, and to remit dues and assessments to the Union on his behalf. AB Painting is therefore liable for the $497.45 contributions it failed to make

---

[3] In contrast, a party may rely on an opposing party's answers to interrogatories because such answers are admissible as statements of a party opponent. See Fed. R. Evid. 801(d)(2). See also Charles A. Wright, Arthur R. Miller & Richard L. Marcus, 8A Federal Practice and Procedure § 2180, at 340 (3d Ed. 1994).

on behalf of Richardson, as well as the undisputed contributions it failed to make on behalf of Beever, Shields and Logothetis. The total principal amount owed by AB Painting to plaintiffs on behalf of Beever, Shields, Logothetis and Richardson is $2,020.90.

In addition to the principal amount, plaintiffs are also entitled to additional recovery under ERISA. Section 502(g) of the Act, as amended by the Multiemployer Pension Plan Amendments Act of 1980, provides that:

> (2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan-
>
> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of-
>
>     (i) interest on the unpaid contributions, or
>
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

>    For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g)(2). The provisions of this section are mandatory. Gilles v. Burton Constr. Co., 736 F.2d 1142, 1144 (7th Cir. 1984). Plaintiffs may recover audit costs as well under the statute. See Moriarty v. Svec, 429 F.3d 710, 721 (7th Cir. 2005). Because we find that AB Painting owes delinquent contributions as revealed by the audit reports, it must also pay interest on the delinquent contributions, plus an amount equal to the greater of interest on the delinquent contributions or statutory liquidated damages as provided in the applicable trust agreements. AB Painting is also liable for reasonable attorneys' fees and costs, including the cost of the audit.

AB Painting challenges plaintiffs' claim that the costs for the second audit were $644.85, arguing that they have provided no breakdown or itemization as to how the costs were derived. Plaintiffs bear the burden of proving that the requested auditor's fees are reasonable. Chicago Dist. Council of Carpenters Pension Fund v. Sciortino Contractors, Inc., 934 F. Supp. 277, 279 (N.D. Ill. 1996) (citing Hensley v. Eckerhart, 461 U.S. 424, 433-34 (1983)). While plaintiffs have not provided a specific breakdown of how the fee was calculated, they have provided a statement from the supervising auditor that B&K's fee charged in this case is

competitive with the fees it charges for other clients for the same work, and is reasonable in terms of time and work required to complete the audit. Because AB Painting has offered no evidence to controvert this statement, the court finds that the requested audit fee of $644.85 is reasonable.

Plaintiffs also request dismissal of their claims against Midwest, stating that discovery uncovered insufficient evidence to support these claims. This request is granted, and all claims against Midwest will be dismissed with prejudice.

## **CONCLUSION**

Plaintiffs' motion for summary judgment with regard to their claim for contributions, dues and assessments owed by defendant AB Painting on behalf of employees Beever, Shields, Logothetis and Richardson totaling $2,020.90 is granted. Plaintiffs' motion for interest, the greater of interest or statutory liquidated damages, and attorneys' fees and costs, including audit costs, also is granted. The court further finds defendant AB Painting liable for the $644.85 fee for the second audit. Plaintiffs are given until October 9, 2006 to submit declarations and/or affidavits and a proposed order setting forth the remaining precise amounts due. Defendant AB Painting will then have until October 16, 2006 to file any objections.

All claims against defendant Midwest Painting and Sandblasting will be dismissed with prejudice.

Date:        September 26, 2006

ENTER:        _____
              John F. Grady, United States District Judge